IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW SWAINSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JEROME WALSH, ET AL. | : | NO. 12-165 |

## MEMORANDUM

**Padova, J.**                                                                                           **July 15, 2014**

Petitioner Andrew Swainson brings this counseled habeas petition pursuant to 28 U.S.C. § 2254.[1]  On May 21, 2012, United States Magistrate Judge Timothy R. Rice issued a Report and Recommendation, recommending that we dismiss the habeas petition with prejudice because Petitioner's claims are second and successive habeas claims, are non-cognizable, and are untimely.   Judge Rice also recommended that we deny Petitioner's requests for discovery, an evidentiary hearing, and a certificate of appealability.   Petitioner has filed objections to the Report and Recommendation.  For the reasons that follow, we overrule Petitioner's objections, adopt the Report and Recommendation, dismiss the petition with prejudice, and deny Petitioner's requests for discovery, an evidentiary hearing, and a certificate of appealability.

## I.   BACKGROUND

### A.   The Crime

At approximately 3:00 a.m. on January 17, 1988, Paul Roger Presley went to 5413 Sansom Street (the "Sansom Street House") in Philadelphia, Pennsylvania, to purchase drugs.

---

[1] On February 23, 2012, this Court transferred the instant petition to the United States Court of Appeals for the Third Circuit to allow Petitioner to seek authorization to file a second or successive habeas petition.  On April 25, 2012, a divided panel of the Third Circuit granted Petitioner's application to file a second petition, finding that he had made the required prima facie showing that he satisfied the requirements for a second and successive petition.

(N.T., 3/17/89 at 4-6, 8.)  As Presley approached the front door, Stanley Opher ran out, followed by Petitioner, who fatally shot Opher in the back with a short-barrel shotgun.  (Id. at 8-9.)  A third man then walked out of the house, pointed a rifle at Presley, and told him to run.  (Id. at 9-10.)  Presley refused, knocked the barrel of the rifle away from him, and struggled with the third man.  (Id. at 10.)  During the struggle, Petitioner grabbed Presley by the collar and pulled him down the steps.  (Id. at 10-11.)  The third man said, "I should shoot you," but then the two men ran from the house.  (Id. at 11.)  Presley also ran, but was stopped by police and charged with aggravated assault.  (Id. at 15, 18, 19, 170.)

      B.      The Investigation, Trial and Sentence

On January 22, 1988, police detective Manuel Santiago questioned Petitioner regarding Opher's murder.  (N.T., 3/8/89 at 14-15.)  Petitioner agreed to be fingerprinted and to have his picture taken.  (Id. at 17-18.)  On February 12, 1988, Santiago showed Presley a black and white photo line-up that included Petitioner's picture, along with seven other African-American males in their mid-twenties with mustaches and beards similar to Petitioner's picture.  (Id. at 20.)  Presley identified Petitioner's photograph, stating: "Yes, this photo is the guy that did the shooting."  (Id. at 23.)  Petitioner was arrested and a preliminary hearing was held on April 14, 1988.  Contrary to his February 12, 1988 identification of Petitioner, Presley initially testified that the person who had shot Opher was not in the courtroom.  (N.T., 4/14/88 at 16.)  Presley, however, testified that Petitioner "look[ed] like" the man who had shot Opher.  (Id. at 15, 35.)

On June 10, 1988, Terrance Gibbs, Petitioner's defense investigator, interviewed Presley. Presley signed an affidavit (the "Presley Affidavit") stating that Petitioner did not shoot Opher, and that the shooter had darker skin than Petitioner.  (Habeas Pet., Ex. 4.)  On February 15, 1989, Santiago re-interviewed Presley, and Presley said that he was now certain that Petitioner was the

shooter.  (Id., Ex. 7; N.T., 3/17/89 at 174.)   At Petitioner's March 1989 trial, Presley again

identified Petitioner as the shooter.  (N.T., 3/17/89 at 33.)

      Jacqueline Morsell, Opher's friend, also testified that Petitioner and a man named

"Indian" had paid Opher to sell drugs at the Sansom Street House.  (N.T., 3/16/89 at 103-04.)

The day before Opher was killed, Opher told Morsell that he had an argument with Indian about

not being paid and that he intended to quit.  (Id. at 112.)   Opher also said that he was unsure if

he could trust Petitioner.  (Id. at 163-64.)  Morsell explained that the short-barrel shotgun used to

shoot Opher was kept in the Sansom Street House and said she had seen Petitioner clean and

carry the gun. (Id. at 121-22.)  The days after Opher's murder, Morsell said Petitioner called her

and told her Opher had been shot.  (Id. at 113.)

      In the summer of 1988, after providing a statement to police, Morsell testified that

Petitioner called her from jail and asked why she would report him to police.  (Id. at 119.)

According to Morsell, Petitioner told her that "it was not supposed to happen like that," and said

that, if she did not testify, she would be "taken care of" and "set up for life."  (Id. at 119, 220.)

      On March 21, 1989, Petitioner was convicted in the Philadelphia County Court of

Common Pleas of murder in the first degree, criminal conspiracy, and possession of an

instrument of crime.  Trial counsel Perry DeMarco filed post-trial motions that were denied.

Petitioner was sentenced to life imprisonment on the murder conviction, a concurrent term of

five to ten years on the conspiracy conviction, and two and one-half to five years on the weapons

conviction.  Trial counsel withdrew, and David Belmont filed notice of appeal on Petitioner's

behalf with the Pennsylvania Superior Court on October 24, 1989, raising four issues.[2]  On June

---

[2] These issues were: (1) whether trial counsel was ineffective for choosing not to present alibi witnesses; (2) whether the trial court erred in not granting the pre-trial motion to suppress evidence of the photographic identification; (3) whether the trial court erred in refusing to grant a

26, 1990, the Pennsylvania Superior Court affirmed Petitioner's conviction in an unpublished opinion.  On February 5, 1991, the Pennsylvania Supreme Court denied allocator.

       C.      The Post-Conviction Proceedings

On January 12, 1993, Petitioner filed a petition pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541. While his PCRA petition was pending, Petitioner filed a habeas petition with this Court on February 24, 1993. Due to this habeas proceeding, the PCRA court dismissed Petitioner's PCRA petition without prejudice on March 18, 1993.  On July 15, 1993, this Court dismissed the habeas petition for failure to exhaust state remedies.

On August 3, 1993, Petitioner filed a second PCRA petition, which was amended to include three claims of prosecutorial misconduct and six claims of ineffective assistance of counsel.[3] The PCRA court appointed Paul Hetznecker, Esquire, to represent Petitioner and held a lengthy evidentiary hearing.  On August 6, 1997, Petitioner was denied relief.

Petitioner timely appealed to the Superior Court, raising two new issues: (1) whether the trial court denied Petitioner an impartial evidentiary hearing on his post-conviction claims; and

---

mistrial when a witness referred to Petitioner's nickname "Blood"; and (4) whether the trial court erred under Commonwealth v. Kloiber, 106 A.2d 820 (Pa. 1954), for failing to give a cautionary warning in the jury instructions about weak identification evidence.

   [3] These claims were: (1) did the prosecutor commit misconduct by implying to the jury that Petitioner did not have character evidence available and that the Petitioner may have a prior criminal record; (2) did the prosecutor commit misconduct by eliciting hearsay testimony to prove Petitioner's motive for the killing; (3) did the prosecutor fail to disclose a witness' statement to trial counsel that constituted misconduct, thereby denying Petitioner a fair trial; (4) did trial counsel fail to present character testimony; (5) did trial counsel fail to present alibi witnesses during the trial; (6) did trial counsel fail to withdraw the alibi defense after learning that there were problems with that defense; (7) did trial counsel fail to object to hearsay evidence or file a motion in limine to exclude it; (8) did trial counsel fail to present the testimony of a defense investigator to rebut the testimony of the eyewitnesses; and (9) did appellate counsel fail to challenge trial counsel's ineffectiveness for the issues set forth above.

(2) whether the case should be remanded for an evidentiary hearing for further exculpatory evidence.  Petitioner also raised eight issues similar to those raised in his second PCRA petition.[4] The appeal was denied on July 13, 1998. On December 30, 1998, the Pennsylvania Supreme Court denied allocatur.

On December 20, 1999, Petitioner filed a second habeas petition.  This Court referred the petition to United States Magistrate Judge Charles B. Smith for a Report and Recommendation. On July 17, 2001, Judge Smith filed a Report and Recommendation, recommending that the petition be denied in all respects.   Petitioner filed timely objections to the Report and Recommendation.   On February 19, 2002, this Court dismissed the petition with prejudice because the claims were procedurally defaulted and lacked merit.  See Swainson v. Varner, No. 99-6480, 2002 WL 241024 (E.D. Pa. Feb. 19, 2002).

On April 22, 2004, Petitioner filed a third PCRA petition requesting DNA testing.  The PCRA court denied the petition, the Superior Court affirmed, and Petitioner did not seek review by the Supreme Court.  See Commonwealth v. Swainson, 943 A.2d 323 (Pa. Super. Ct. Oct. 2007).

---

[4] These claims alleged that: (1) the prosecutor committed misconduct by implying to the jury that Petitioner did not have character evidence and by suggesting that the jury consider the possibility that he had committed crimes in other jurisdictions; (2) the prosecutor committed misconduct by eliciting alleged hearsay testimony; (3) the prosecutor committed misconduct by failing to disclose a witness statement prior to trial; (4) appellant counsel was ineffective for not alleging on appeal that trial counsel was ineffective for not presenting character evidence at trial; (5) trial counsel was ineffective for telling the jury that he would present alibi witnesses, but then failing to produce any such testimony at trial; (6) appellate counsel was ineffective for failing to allege trial counsel's ineffectiveness for failing to withdraw the alibi defense prior to trial, knowing the defense was problematic; (7) appellate counsel rendered ineffective assistance of counsel for choosing not to assert trial counsel's ineffectiveness concerning the introduction of hearsay evidence; and (8) trial counsel was ineffective for not calling the defense investigator in rebuttal, and appellate counsel was ineffective for not litigating this issue on direct appeal.

In 2005, Petitioner contacted Russell Kolins, a criminal defense investigator, for pro bono assistance in trying to locate and interview Presley.  (See Habeas Pet. at 20.)  Kolins met Presley at a prison in Leesburg, New Jersey, in 2007.  (Id. at 20-21.)  In December 2007, Presley sent Kolins a letter explaining that he had reservations about discussing his testimony until he spoke with an attorney about possible perjury charges.  (Id., Ex. 21.)

On October 3, 2008, Presley again met with Kolins and explained that he retained serious reservations about discussing his trial testimony.  (Id. at 22.)  Nevertheless, on October 13, 2008, Presley provided Kolins with a four-page affidavit ("Presley's 2008 recantation"), stating:

- Presley never picked Petitioner out of a seven-man photo line-up.  Rather, the prosecution and police showed Presley several photos of only Petitioner.  They also told Presley that Petitioner was the individual who shot and killed Opher, was a responsible for other murders, and was a notorious drug kingpin.

- Presley knew in his heart that Petitioner was not the shooter because the shooter was a dark-skinned African-American and Petitioner had lighter skin.

- Gibbs and Petitioner never told Presley he would be compensated if he signed the Presley Affidavit.  The Assistant District Attorney prosecuting Petitioner's case told Presley before trial that he had to testify that Gibbs and Petitioner had threatened him and that his statements in the Presley Affidavit were false.

- Presley believed that he had an implicit agreement with the prosecutor that if he testified against Petitioner, the prosecutor would dismiss any pending state charges against him and find him a job.

(Id., Exs. 2-3.)

On December 11, 2008, Petitioner filed his fourth PCRA petition based on Presley's 2008 recantation.  The PCRA court summarily denied Petitioner's motion as untimely.  The Superior Court affirmed, and Petitioner did not seek review from the Supreme Court.

Presley died in 2010.  (Pet.'s Resp. at 16.)

On January 13, 2012, Petitioner filed the instant petition, asserting that: (1) newly discovered evidence demonstrates that he is actually innocent based on Presley's 2008 recantation of his identification of Petitioner; (2) the Commonwealth knowingly presented false evidence at trial; (3) the Commonwealth failed to disclose material exculpatory and impeachment evidence; (4) the Commonwealth permitted an unduly suggestive identification of Petitioner in a photo line-up; (5) Petitioner's trial counsel was ineffective for failing to investigate and discover exculpatory and impeaching evidence; and (6) Petitioner was denied due process when the PCRA court failed to allow him discovery or an evidentiary hearing.  (Habeas Pet. at 28-49.)  Petitioner has also filed motions for discovery and for an evidentiary hearing.

## II.    STANDARD OF REVIEW

Where a habeas petition has been referred to a magistrate judge for a report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made . . . . [T]he court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petition for habeas corpus may be granted only if (1) the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) the adjudication

resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence." Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

## III.    DISCUSSION

As we noted above, Petitioner asserts six claims for habeas relief: (1) actual innocence; (2) false evidence; (3) failure to disclose exculpatory and impeachment evidence; (4) suggestive identification; (5) ineffective assistance of counsel; and (6) denial of due process rights through denial of discovery and an evidentiary hearing.  In his Report and Recommendation, Judge Rice recommends that we dismiss Petitioner's first five claims as second and successive, his sixth claim as non-cognizable, and all six of his claims as untimely.  Judge Rice further recommends that we deny Petitioner's requests for discovery, an evidentiary hearing and a certificate of appealability.  Petitioner has filed objections to Judge Rice's recommendations that we dismiss his first four claims as second and successive, that we dismiss his petition as untimely, and that we deny him discovery and a certificate of appealability.  In accordance with 28 U.S.C. § 636(b), the Court will conduct a de novo determination of the issues raised.

A.    Second or Successive Petition

We first consider Petitioner's objections to Judge Rice's recommendation that we dismiss Petitioner's first four claims as second and successive.[5]  The federal habeas statute governing second and successive petitions under section 2254 states, in pertinent part, that:

_____

[5] On April 25, 2012, the United States Court of Appeals for the Third Circuit found that Petitioner made a prima facie showing for a second and successive petition.  However, we must still consider whether the requirements for a second and successive are fully satisfied.  See 28

(b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b).

Petitioner asserts five objections to Judge Rice's recommendation that we dismiss his first four claims as second and successive.  First, Petitioner argues that his claim for failure to disclose exculpatory evidence is categorically exempt from the requirements for second and successive petitions based on Panetti v. Quarterman, 551 U.S. 930 (2007), and United States v. Lopez, 577 F.3d 1053, 1066 (9th Cir. 2009).  Second, Petitioner contends that it is not his burden to demonstrate that he could not have previously discovered the factual predicate of his first four claims because, when "police or prosecutors conceal significant exculpatory or impeaching material in the State's possession, it is ordinarily incumbent on the State to set the record straight."  Banks v. Dretke, 540 U.S. 668, 675 (2004).  Third, Petitioner argues that an affidavit from private

---

U.S.C. § 2244(b)(4) ("A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section"); Ashford v. Coleman, No. 10-7491, 2011 WL 2708630, at *4 (E.D. Pa. June 14, 2011) (concluding that, although the petitioner's claim satisfied the Third Circuit's prima facie review, the district court's examination revealed that the claim did not satisfy the statutory requirements for a second or successive petition).

investigator Kolins, which states that Presley told Kolins that he would have been unwilling to discuss his role in Petitioner's conviction before he "accepted the Lord Jesus Christ into his life" in 2008, establishes that Petitioner could not have previously discovered the factual predicate for his first four claims.  (Habeas Pet., Ex. 44, ¶ 15.) Fourth, Petitioner argues that Presley's 2008 recantation contains nine new facts of which the factfinders were not aware at the time of trial and, if reasonable factfinders had known these facts, they would not have found Petitioner guilty.  Fifth, Petitioner contends that an affidavit from Gibbs, which states that Gibbs did not pressure Presley to perjure himself, establishes that Presley's 2008 recantation is credible, and reasonable factfinders would not have found Petitioner guilty if they had known this fact.  We reject these arguments.

       1.    <u>Exemption</u>

Judge Rice was correct that Petitioner's claims are subject to the requirements for second and successive petitions.   Neither <u>Panetti</u> nor <u>Lopez</u> supports Petitioner's contention that claims for failure to disclose exculpatory evidence are categorically exempt from the bar on second and successive petitions.  In <u>Panetti</u>, the Supreme Court did not decide that <u>Brady</u>-based claims, such as Petitioner's, are exempt from the bar on second and successive petitions.  <u>See</u> <u>Panetti</u>, 551 U.S. at 945 (holding that "Congress did not intend the provisions of AEDPA addressing 'second or successive' petitions to govern a filing in the unusual posture presented here: a § 2254 application raising a <u>Ford</u>-based incompetency claim filed as soon as that claim is ripe.") Likewise, and as Petitioner acknowledges, (<u>see</u> Objections ¶ 104), the United States Court of Appeals for the Ninth Circuit did not hold in <u>Lopez</u> that <u>Brady</u>-based claims are categorically exempt

from the bar on second and successive petitions.  See Lopez, 577 F.3d at 1066 ("Lopez's and amici's argument that Panetti supports exempting all second-in-time Brady claims from AEDPA's gatekeeping provisions is untenable.")  Therefore, we conclude that Petitioner's claim for failure to disclose exculpatory evidence is not exempt from the bar on second and successive habeas petitions.

>2.     Due Diligence

Having determined that Petitioner's claims are subject to the requirements for second and successive petitions, we agree with Judge Rice that the habeas petition should be dismissed as second and successive because Petitioner could have previously discovered the factual predicate of his first four claims if he had exercised due diligence.  Petitioner's contention that it is not his burden to demonstrate that he could not have previously discovered the factual predicate of his first four claims is meritless.  While Banks held that when "police or prosecutors conceal significant exculpatory or impeaching material in the State's possession, it is ordinarily incumbent on the State to set the record straight,"  Petitioner has not established that "police or prosecutors conceal[ed] significant exculpatory or impeaching material."  Banks, 540 U.S. at 675.  Therefore, we conclude that it is not "incumbent on the State to set the record straight."  Id.

Petitioner's argument that he could not have previously discovered the factual predicate for his first four claims because Presley told Kolins that he would have been unwilling to discuss his role in Petitioner's conviction before he "accepted the Lord Jesus Christ into his life" in 2008 is also meritless.  (Habeas Pet., Ex. 44, ¶ 15.)  As Judge Rice noted, Petitioner had ample opportunity to discover the factual predicate of his first four claims before 2008.  As early as his 1989 trial, Petitioner knew that Presley's statements were unreliable, as Presley had already changed his testimony twice before trial.  Furthermore, prior to filing the instant petition,

Petitioner had already fully litigated three PCRA petitions, as well as a federal habeas petition, in which he raised several other challenges to his conviction.  Petitioner offers no reasonable basis to explain why he could not have sought the information contained in Presley's 2008 recantation in connection with these earlier proceedings.  Therefore, we conclude that Petitioner could have previously discovered the factual predicate of his first four claims if he had exercised due diligence.  Thus, Petitioner's first four claims are dismissed as second and successive.

3.      Guilt

Even if Petitioner had acted with due diligence in timely obtaining Presley's 2008 recantation, we agree with Judge Rice that Petitioner's first four claims should be dismissed as second and successive because Petitioner has failed to establish by clear and convincing evidence that no reasonable factfinder, once informed of Presley's 2008 recantation, would have found Petitioner guilty.   Recantation statements, such as Presley's 2008 recantation, are inherently suspect.  See Dobbert v. Wainwright, 468 U.S. 1231, 1233-34 (1984) ("Recantation testimony is properly viewed with great suspicion.  It . . . is very often unreliable . . . .") Petitioner's nine alleged new facts are contradicted by other evidence and, therefore, lack credibility.[6]

---

[6] Petitioner's first, second, third, and fourth alleged new facts are Presley's 2008 claims that Santiago "never showed Presley a seven-man photo array," that the seven-photo spread showed only Petitioner, and that Presley informed the Commonwealth that Petitioner was not the shooter (in part because his skin color differed from that of the shooter).  (Objections at 6.)  However, the state court record contradicts these assertions.  The record indicates that on February 12, 1988, Santiago showed Presley an array of photographs of seven different men, including one of Petitioner, and that Presley identified Petitioner as the shooter of Opher. (Docket No. 22, Ex. A at 4.)  Moreover, at trial, Presley again identified Petitioner as the shooter of Opher.  (N.T., 3/17/89 at 19-20, 33-35, 136-37.)

Petitioner's fifth alleged new fact is that Assistant District Attorney Judith Rubino, who was assigned to the case, scolded Presley after the preliminary hearing, calling his testimony unacceptable.  (Objections at 7.)  However, the record contradicts this assertion, as it indicates that Rubino was not assigned to the case until after the preliminary hearing.  (N.T. 4/14/88 at 3.)

Moreover, the jury that convicted Petitioner already knew that Presley had sworn at the April 14, 1988 preliminary hearing that Petitioner was not the shooter, and yet convicted Petitioner anyway.[7]  Petitioner does not explain why another recantation by the same witness, approximately twenty years later, would persuade a reasonable factfinder to acquit Petitioner, particularly when that recantation is inherently suspect and contradicted by the state record.  Nor does Petitioner satisfactorily rebut the other evidence in this case, including Morsell's testimony, that supported Petitioner's conviction.[8]  Therefore, we conclude that Petitioner has failed to establish by clear and convincing evidence that no reasonable factfinder would have convicted him if aware of Presley's 2008 recantation.

As we noted above, Petitioner also argues that Gibbs's 2008 affidavit, establishes that Presley's 2008 recantation is credible, and that reasonable factfinders would have acquitted Petitioner if they had known this fact.  However, even if Gibbs's affidavit is correct and Gibbs

---

Petitioner's <u>sixth</u> alleged new fact is that neither Gibbs nor Petitioner bribed Presley to sign his June 10, 1988 affidavit.  (Objections at 7.)  However, this claim contradicts Presley's previous statements, on February 15 and 17, 1989, in which he averred that Petitioner had bribed him. (Habeas Pet., Exs. 7-8.)

Petitioner's <u>seventh</u>, <u>eighth</u> and <u>ninth</u> alleged new facts are that, before trial, Rubino scolded Presley for signing the Gibbs statement, dismissed the charges against him, and promised to secure him a job if Presley claimed that Petitioner and Gibbs had bribed him to perjure himself.  (Objections at 7.)  However, the state court record indicates that Santiago — not Rubino — sought to dismiss the charges against Presley.  (N.T., 3/17/89 at 170.)

[7] At trial, Presley was cross-examined on the contradictions between his trial testimony and his testimony at the April 14, 1988 preliminary hearing.  (N.T., 03/17/89 at 65.)

[8] Petitioner objects to Judge Rice's statement, made in a footnote to his Report and Recommendation, that Morsell's trial testimony supported Petitioner's conviction.  Specifically, Petitioner argues Morsell's trial testimony is not credible because her testimony did not include statements she made to police before trial. However, even if Morsell's trial testimony did not include statements she had previously made to police, it does not follow from this fact that Morsell's testimony must be false.  Therefore, we conclude that Petitioner has failed to meet his burden of establishing, by clear and convincing evidence, that Morsell's trial testimony is false. <u>See</u> <u>Werts</u>, 228 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)) ("Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.")

never pressured Presley to perjure himself, (Habeas Pet., Ex. 4), it does not follow from this fact that the rest of Presley's 2008 recantation is credible or that the rest of Presley's trial testimony is false.  Therefore, we conclude that, even if Gibbs did not pressure Presley, Petitioner has not satisfied his burden of establishing that the facts underlying his first four claims are "sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."   28 U.S.C. § 2244(b)(2)(B)(ii).   Accordingly, we dismiss Petitioner's first four claims as second and successive.

      B.    <u>Timeliness</u>

We next consider Petitioner's objection to Judge Rice's recommendation that we dismiss the entire petition as untimely.  Section 2244(d)(1) states in relevant part:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court.  The limitation period shall run from the latest of —
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; . . .
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  In this case, Petitioner's judgment of conviction became final on May 6, 1991, ninety days after the Pennsylvania Supreme Court denied review of Petitioner's direct appeal.  Therefore, Petitioner's deadline for filing a section 2255 petition was May 6, 1992. Petitioner did not file this habeas petition until January 13, 2012.  However, Petitioner argues that he qualifies for an equitable exception to the statute of limitations because he is actually innocent and, therefore, his petition should not be dismissed as untimely.

To avoid a miscarriage of justice, a federal court may entertain a section 2254 habeas corpus petition where that petition raises a convincing claim of actual innocence even if the

14

statute of limitations for such a petition has expired. See McQuiggin v. Perkins, 133 S.Ct. 1924, 1934-35 (2013). However, that equitable exception applies only to a "severely confined category" of cases: those where the petitioner produces new evidence sufficient to show that "it is more likely than not that no reasonable juror would have convicted [the petitioner]." Id. at 1933 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

Petitioner has failed to meet the demanding standard of actual innocence set out in McQuiggin. Presley's 2008 recantation is inherently suspect, the nine alleged new facts contained in Presley's 2008 recantation are contradicted by the evidence in the state court record, and the jury that convicted Petitioner already knew that Presley had sworn at the April 14, 1988 preliminary hearing that Petitioner was not the shooter, and yet convicted Petitioner anyway. Thus, for the same reasons that Petitioner cannot be excused from the second and successive bar, we conclude that no equitable exception to the statute of limitations applies in this case. As we have already determined that Petitioner's deadline for filing his habeas petition expired before Petitioner filed his petition on January 13, 2012, and because no equitable exception to the statute of limitations applies, we dismiss the petition as untimely.

C.    Discovery

We next consider Petitioner's objection to Judge Rice's recommendation that we deny Petitioner's request for discovery of the district attorney's case file, the police department homicide file, and Santiago's personnel file, and for depositions of Santiago and Morsell. Petitioner argues that he has demonstrated good cause for discovery because discovery will enable him, in three ways, to satisfy the procedural requirements that currently bar consideration of his petition. First, Petitioner avers that discovery will reveal that the district attorney's office withheld evidence that corroborates Presley's recantation and, because the district attorney's

office withheld that evidence, Petitioner cannot be faulted for not having previously discovered the factual predicate for his first four claims.  Second, Petitioner asserts that discovery may corroborate Presley's 2008 recantation and, therefore, Petitioner will be able to establish that no reasonable factfinders would have convicted him if they had been aware of Presley's 2008 recantation.  Third, Petitioner contends that, once Presley's 2008 recantation is corroborated, he will be able to establish his actual innocence and, therefore, qualify for an equitable exception to the one year statute of limitations barring his petition.  Petitioner cites various court cases involving allegations of police misconduct in Philadelphia to support his contention that discovery will be fruitful.[9]

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course."  Bracy v. Gramley, 520 U.S. 899, 904 (1997).  However, a "judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."  Rules Governing § 2254 Cases, Rule 6(a). The requisite good cause for discovery in a habeas action is shown "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  Bracy, 520 U.S. at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)).  "A habeas petitioner may satisfy the 'good cause' standard by setting forth specific factual allegations which, if fully developed, would entitle him or her to the writ."  Williams v. Beard, 637 F.3d 195, 209 (3d Cir. 2011) (citing Harris, 394 U.S. at 300).

---

[9] See e.g., Lambert v. Beard, 633 F.3d 126, 129 (3d Cir. 2011), *rev'd and remanded*, Wetzek v. Lambert, 132 S.Ct. 1195 (2012); Wilson v. Beard, 589 F.3d 651, 656, 661-664 (3d Cir. 2009); Commonwealth v. Percy St. George, Case No. 1257, Oct. Term 1993 (Philadelphia County); Commonwealth v. Write, CP 51-CR-1131582-1991 (Philadelphia County).

We agree with Judge Rice that Petitioner has failed to establish good cause.  While it is possible that Petitioner could uncover evidence through discovery that would establish his actual innocence, as could any petitioner, "petitioners are not entitled to go on a fishing expedition through the government's files in hopes of finding some damaging evidence."  Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir. 1994) (quoting Munoz v. Keane, 777 F.Supp. 282, 287 (S.D.N.Y. 1991), aff'd, 964 F.2d 1295 (2d Cir. 1992)); see also Murphy v. Johnson, 205 F.3d 809, 814 (5th Cir. 2000) ("Simply put, Rule 6 does not authorize fishing expeditions.").  Given that Presley's 2008 recantation is inherently suspect and contradicted by the state record, we conclude that Petitioner's request for discovery to corroborate that recantation is speculative and should be rejected.  Thus, we deny Petitioner's request for discovery.[10]

D.     Certificate of Appealability

Finally, we consider Petitioner's objection to Judge Rice's recommendation that that we decline to issue a certificate of appealability. Petitioner contends that a reasonable jurist would find it debatable whether his petition is procedurally barred and, therefore, we should issue a certificate of appealability.

For a certificate of appealability to issue when a court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the petitioner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  For the reasons stated above, we have already determined that this section 2254 habeas petition is procedurally barred because

---

[10] We need not reach Petitioner's arguments that discovery may establish that his habeas petition is not barred as second and successive because, even if those arguments succeed, we have already concluded that discovery will not enable him to overcome the one-year statute of limitations.

it does not satisfy the requirements for a second and successive petition, and is untimely.  We are also persuaded that reasonable jurists would not debate the correctness of this conclusion.  <u>See id.</u> ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.")  Consequently, we decline to issue a certificate of appealability.

## IV.    CONCLUSION

Upon careful consideration of Petitioner's objections to Judge Rice's Report and Recommendation, we find that none of Petitioner's objections has merit.  Consequently, we overrule Petitioner's objections, approve and adopt Judge Rice's Report and Recommendation, dismiss the habeas petition, and deny Petitioner's requests for discovery, an evidentiary hearing, and a certificate of appealability.  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova_____
John R. Padova, J.

18